UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 2:09-CR-106 |
| ) | |
| GARY RAYMOUND BUNTON ) | |

**REPORT AND RECOMMENDATION**

Defendant Bunton has filed a motion to suppress "all evidence obtained, including any statements made by the defendant prior to, during, or after his arrest arising from the search of his person, his personal belongings and the vehicle he was driving on June 14, 2009, in Johnson County, Tennessee." (Doc. 10). This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 4, 2010.

Defendant is charged with being a convicted felon in possession of ammunition. The evidence against him - the ammunition - was discovered during a search of his person, and of the vehicle he was driving, that followed his arrest on June 14, 2009, for a traffic violation.

At the outset, it should be pointed out that this is *not* a case that implicates the recent Supreme Court case of *Arizona v. Gant*, __ US __ 129 S.Ct. 1710 (2009), which holds that the vehicle of a person arrested for a traffic violation generally cannot be searched as an incident to that arrest. The search of defendant's person, and the subsequent search of his

vehicle, was based on probable cause, as more fully discussed hereafter.

On June 14, 2009, Sergeant Christopher Dunn of the Johnson County Sheriffs Department was on routine patrol in a rural area of Johnson County, Tennessee. Specifically, he was driving on Buntontown Road as it ran along the shore of Watauga Lake. Sergeant Dunn has been with the Johnson County Sheriffs Department for eight years. For that entire eight years, Sergeant Dunn, as well as all other officers with the Johnson County Sheriffs Department, knew the defendant. Of course, when law enforcement officers know an individual well, all too often it is because that individual consistently violates the law, and defendant herein well fits that description. Indeed, one of defendant's convictions was for aggravated assault upon a female employee of the Johnson County Sheriffs Department in 2006. In addition, he has a lengthy criminal driving history involving multiple convictions for DUI and driving on a revoked license.

As he drove along Buntontown Road, Sergeant Dunn met a vehicle proceeding in the opposite direction; he immediately recognized the driver as defendant. At that time, Sergeant Dunn was somewhat surprised to see defendant, thinking that he had been living in South Carolina as a result of an "Alternative Sentencing Order" filed by the Criminal Court of Johnson County as a result of his conviction for aggravated assault.[1] In any event, Sergeant Dunn "knew" that defendant's drivers license was revoked. The officer turned his vehicle around, activated his blue lights, and attempted to make a traffic stop. A relatively short

---

[1]Ex. 6.

distance ahead, defendant pulled over and, as Sergeant Dunn approached, defendant was out of his car, and walking behind it, suggesting to Sergeant Dunn that defendant and his passenger were attempting to swap positions in the vehicle. Indeed, defendant told Sergeant Dunn that he was not driving the vehicle, notwithstanding that Sergeant Dunn clearly saw that he was driving.

When Sergeant Dunn asked defendant for his drivers license, defendant exhibited a Tennessee Identification Card which Tennessee issues to individuals without a drivers license and which is used only for identification purposes.

Sergeant Dunn called his dispatcher and gave her the number on that identification card. He shortly received confirmation that defendant's drivers license was revoked.

The officer arrested defendant and patted him down, discovering in his right front pants' pocket an empty gun holster and two rounds of .22 caliber ammunition. Sergeant Dunn also knew that defendant was a convicted felon, as a result of which defendant could not possess either guns or ammunition.

Sergeant Dunn instructed his dispatcher to send a wrecker to the scene to tow defendant's vehicle to the impound lot of the sheriffs department. Prior to the car being towed away, Sergeant Dunn searched the interior, discovering a significant number of rounds of live .22 caliber ammunition, spent .22 caliber cases, and some live 12-gauge shotgun shells.

The small handgun that would have fit the holster found in defendant's pocket was not found. Although defendant had just traversed the bridge that crossed Watauga Lake,

Sergeant Dunn did not see defendant throw anything from the car into the lake. Thus, Sergeant Dunn rightfully suspected that the gun was somewhere in the car. Certainly it is not the ususal practice for a person to carry an empty holster and 2 rounds of ammunition in their pocket, and it was reasonable to suspect that he may have still had the gun nearby.

As an initial matter, defendant endeavored to call Sergeant Dunn's credibility and impartiality into question by showing, through cross examination of Sergeant Dunn, that he had (or has) an uncle who was at least charged with two murders, and that one or both of the victims had some relationship with defendant. As the old saying goes, you can pick your friends but you cannot pick your family. The court closely observed Sergeant Dunn during his entire testimony, and even more so during the portion just described, and the court is convinced beyond any doubt that Sergeant Dunn is credible, honorable, and professional. Stated succinctly, he told the truth.

Defendant's real argument is that Sergeant Dunn had no probable cause to stop defendant's vehicle because he believed defendant had no drivers license. In this regard, defendant pointed out that he had been living in South Carolina since 2006, and during that period of time it was possible that he could have obtained a legitimate drivers license. In other words, defendant basically makes a "staleness" argument: that the last information that Sergeant Dunn had regarding defendant's drivers license was in 2006 or earlier, and information of that age did not justify his traffic stop of defendant.

A law enforcement officer may stop and briefly detain a person for investigative purposes when that officer has "reasonable suspicion," based on articulable facts, that

criminal activity has occurred or is about to occur. *See, Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Williams*, 962 F.2d 1218, 1223-24, 6th Cir. *cert*. denied, 506 U.S. 892 (1992).

The presence or absence of reasonable suspicion is determined by the "totality of the circumstances," which includes any information known to the officer and inferences that reasonably may be drawn from that information, *United States v. Barnes*, 910 F.2d 1342 (6th Cir. 1990). Not only is absolute certainty not a requirement, neither is probable cause a requirement to effect an investigative stop under *Terry v. Ohio*.

Under the totality of the circumstances, which included defendant's lengthy criminal history involving multiple convictions for driving under the influence and for driving on a revoked license, Sergeant Dunn had far more than a "reasonable suspicion" that defendant had no drivers license at the time he observed him on June 14, 2009. A brief traffic stop to confirm that suspicion was justifiable. If defendant indeed had a drivers license, the exhibition of that drivers license would have immediately ended the encounter and this discussion would not be taking place. But rather than exhibiting a drivers license, defendant provided the officer with an Identification Only card which immediately confirmed that he had no drivers license.[2] And, if this wasn't enough, a subsequent conversation with his dispatcher confirmed that his license was still revoked. Reasonable suspicion ripened into probable cause, and defendant was arrested.

---

[2]And, lest it be forgotten, he lied to Sergeant Dunn about being the driver.

5

A pat-down search of his person as an incident to that arrest was appropriate; *see, United States v. Robinson*, 414 U.S. 218, 229 (1973). That search, as already discussed, revealed an empty holster and 2 rounds of ammunition. The ammunition in his pocket constituted a felony violation of federal and state law. Additionally, it was reasonable to believe that the empty holster once contained a handgun, and that the handgun more likely than not was somewhere in the passenger compartment of the vehicle. If law enforcement officers have probable cause to believe that the vehicle contains incriminating evidence, they may search it. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999). This, of course, is the so-called "automobile exception" to the warrant requirement of the Fourth Amendment.

In addition to the foregoing, there is yet another basis to uphold Sergeant Dunn's search of this vehicle: he intended to impound the vehicle due to the fact that defendant was driving this vehicle while his license was revoked.[3] Inventory searches are an additional exception to the warrant requirements of the Fourth Amendment. *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *United States v. Steele*, 727 F.2d 580, 6th Cir., *cert*. denied, 467 U.S. 1209 (19984).

In summation, the stop of defendant's vehicle on June 14, 2009, was proper; his arrest was proper; the search of his person was proper; the search of the interior of his vehicle was proper; and there was no violation of the Fourth Amendment.

---

[3] The vehicle ultimately was forfeited to the state.

It is respectfully recommended that this court deny his motion to suppress.[4]

Respectfully submitted,

                                                            s/ Dennis H. Inman
                                              United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).