IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09-CR-106 |
| | ) | |
| GARY R. BUNTON | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendant's objections to the magistrate judge's report and recommendation that defendant's motion to suppress evidence seized during a traffic stop be denied [doc. 23]. The government has filed a response [doc. 26], and the defendant has filed a reply brief [doc. 27] and a correction of the facts [doc.28]. A transcript of the suppression hearing has been prepared [doc. 24]. The defendant's objections are ripe for the court's consideration and for the reasons discussed below the defendant's objections and the motion to suppress will be granted.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

## Factual Background

Sergeant Christopher Dunn of the Johnson County Sheriff's Department was the only witness who testified at the suppression hearing. On June 14, 2009, he was in his patrol vehicle traveling on Buntontown Road, when he met a vehicle coming from the other direction and being driven by the defendant.

Sergeant Dunn stated that he had been with the Sheriff's Department since 2002 and that he had known the defendant as long as he has been in law enforcement. He also knew that the defendant was a convicted felon because of a 2005 conviction for assault. Sergeant Dunn stated, "I've been very familiar with Mr. Bunton through my law, law enforcement career. The only reason I did stop him that day was just for, because he was revoked. I mean, he wasn't driving out of the ordinary. He wasn't, you know, driving, speeding or reckless driving or nothing." When asked whether he had "any question" that the defendant's license was revoked, Sergeant Dunn stated that he "knew he was revoked."

Based on this knowledge, Sergeant Dunn turned around and stopped the defendant's vehicle. After stopping the vehicle, Sergeant Dunn called his dispatcher, confirmed that the defendant's license was revoked (in

2003), and arrested the defendant.   During the pat-down search of the defendant, Sergeant Dunn found ammunition in the defendant's pockets.

A portion of Sergeant Dunn's cross examination is instructive on the issue of his knowledge of the status of the defendant's right to drive a vehicle.

Q: Now Officer Dunn, you've testified to a statement that you were aware that Mr. Bunton had a revoked license, right?

A: That's correct.

Q: And what, how were you aware of that?

A: Just in encounters I've had with him when he was on the street. Mr. Bunton's, most of Mr. Bunton's life he's been in the jail or in the prison system.  Every time, you know, we'd serve warrants, run criminal histories, this, you know, information on him, why I had knowledge that he was revoked.

Q: Well, had you stopped him other than, than this date, any time between 2006 and this date?

A: No.  He was incarcerated during that time, then I think he left the state and . . .

Q: Right. So you hadn't had any encounter with him then . . .?

A: Not since then.

Q: He'd left the state . . .?

A: That's correct.

Q: . . . and moved to South Carolina, right?

A: That's correct.

Q: And so since 2006 didn't have any knowledge about whether he had a license or not, right?

A: Just, you know, just believed that he was revoked and . . .

Later, Sergeant Dunn admitted that he thought the defendant was still in South Carolina until he saw him driving that day. The only other time Sergeant Dunn personally had arrested the defendant was after the incident at issue in this case.

In his report and recommendation, the magistrate judge found:

> Under the totality of the circumstances, which included defendant's lengthy criminal history involving multiple convictions for driving under the influence and for driving on a revoked license, Sergeant Dunn had far more than a "reasonable suspicion" that defendant had no drivers license at the time he observed him on June 14, 2009. A brief traffic stop to confirm that suspicion was justifiable.

[doc. 19] at p.5.

The defendant argues that the information upon which Sergeant Dunn relied was too stale to provide the necessary reasonable suspicion to stop the defendant's vehicle. In opposition, the government contends that where the criminal activity is "ongoing," it will take longer for the information to become stale. Driving on a revoked license is an ongoing offense and the defendant had a continuous pattern of driving on a revoked license during the time that Sergeant Dunn knew him.

## **Legal Discussion**

In the Sixth Circuit, a traffic stop for an ongoing violation of a felony or a misdemeanor is governed by the standard of reasonable suspicion. *See*

*United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). The officer must have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" stopping a driver and making an inquiry. *Terry v. Ohio*, 392 U.S.1, 21 (1968). "[A]n officer's reliance on a mere 'hunch' is insufficient to justify a stop." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). The court is to consider the totality of the circumstances, and "the stop must be justified at its inception." *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008).

In this case, based on Sergeant Dunn's testimony, the facts and circumstances known to him at the time he decided to stop the defendant's vehicle are:

(1) The defendant had a history of criminal conduct which Sergeant Dunn had known about since 2002;

(2) Sergeant Dunn knew that the defendant's driver's license had been revoked in the past;

(3) The defendant was a convicted felon; and

(4) Sergeant Dunn believed the defendant had been in South Carolina since 2006.

The court finds that the totality of these facts do not add up to a reasonable suspicion that the defendant was driving on a revoked license in 2009 when he was stopped, because the information was too stale.

In *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004), the Sixth Circuit found that "where the criminal activity is of an ongoing nature, it will take longer for the information to become stale." The court pointed out that driving on a revoked license was an "ongoing" offense and that the officer had a reasonable basis for suspecting that the defendant lacked a valid license 22 days after he had checked on the status of the defendant's license. *Id.* Thus, the court held that the stop did not violate the defendant's Fourth Amendment rights. *Id.*

The Tenth Circuit, however, held that the stop of the defendant's vehicle was a violation of the defendant's Fourth Amendment rights because the officer's information was too stale to justify stopping the defendant on the belief that the defendant's drivers license was suspended. *United States v. Laughrin*, 438 F.3d 1245, 1248 (10th Cir. 2006). The proof was that the officer had prior knowledge of the defendant's license status because he had stopped him several times, but the last stop was at least 22 weeks before the stop at issue because the officer was at the police academy during that time. The Tenth Circuit found that knowledge of a defendant's prior criminal history, even if related to the status of his drivers license, was insufficient by itself to give the officer the necessary reasonable suspicion. *Id.* at 1247. Otherwise, the court stated, a stop could occur at any time or place based solely on a record of prior arrests or convictions. *Id.* The court recognized that the offense of driving without a license was an ongoing violation, "[b]ut whether it is reasonable to believe that [defendant] has

6

continued to drive without a license depends on the length of time since he was last found to be driving without a license." *Id.* at 1248. The Tenth Circuit distinguished the Sixth Circuit's *Sandridge* decision stating, "Twenty-two days is significantly less than 22 weeks." *Id.*

The government relies on *United States v. Pierre*, 484 F.3d 75 (1st Cir. 2007). In *Pierre*, the officer stopped the defendant because he was "aware" that the defendant did not have a valid drivers license. The defendant argued that the officer's information was stale and the stop violated his Fourth Amendment rights. *Id.* at 83. The officer testified that when he was working in vice a few years before, he was informed by other officers that the defendant's license had been revoked. *Id.* This information was relevant because the defendant was known to deal drugs. *Id.* at 84. After the officer left the unit, no one ever informed him that the defendant's license status had changed. *Id.* The First Circuit found that the defendant's license "was suspended on an ongoing basis, rather than for a short period of time, making the suspicion that it was still inactive some five months later more reasonable." *Id.* The court held that the officer had reasonable suspicion to stop the defendant's car. *Id.*

While there is no bright line rule as to the length of time that must pass before information becomes stale, in the present case it had been at least three years, if not longer, since Sergeant Dunn had received any information about the status of the defendant's drivers license. The length of time since

Sergeant Dunn had any knowledge that the defendant had no valid license distinguishes this case from *Sandridge* and *Pierre*. In fact, the length of time in this case is much longer than the 22 weeks that invalidated the traffic stop in *Laughrin*. Further, Sergeant Dunn had never stopped the defendant before and he had never personally checked on the status of the defendant's license. The court finds that Sergeant Dunn's information was too stale to justify stopping the defendant's vehicle on the belief that the defendant's drivers license was suspended.

## **Conclusion**

For the reasons stated above, it is hereby **ORDERED** that the defendant's objections to the report and recommendation are **GRANTED**. It is further **ORDERED** that the defendant's motion to suppress all evidence obtained as a result of the traffic stop on June 14, 2009 [doc.10] is **GRANTED**.

ENTER:

    *s/ Leon Jordan*
United States District Judge